23271. HARRIS v. GEORGIA MILITARY ACADEMY.

SUBMITTED DECEMBER 15, 1965—DECIDED JANUARY 27, 1966.

*Jackson B. Harris, Richard L. Starnes, Jr.,* for appellant.
*Randolph W. Thomas, Madison Richardson, Charles Kirbo, Sutherland, Asbill & Brennan,* for appellee.

MOBLEY, Justice. Georgia Military Academy filed its petition for declaratory judgment praying that the court hold that if it (a) should abolish military training for its students, (b) should admit girls and young women as students, and (c) should change its corporate name to Woodward Academy, Inc., all as provided in a resolution of its governing board, the doing of these things would not violate a condition subsequent in the deed under which it holds the major portion of its property. The condition subsequent provided for the reversion of the property to the heirs of Colonel J. C. Woodward "if ever the aforementioned properties herein conveyed cease to be used for the purposes set forth in the charter of the grantee corporation." The appellants, who would, in the event of reverter, have a one-sixth undivided interest in the property, filed an answer in which they contend that the property would revert to them and the other

heirs of Colonel J. C. Woodward should the proposed action of the governing board be carried out.

A motion for summary judgment filed by Georgia Military Academy was granted, from which judgment appeal was filed. The sole error enumerated is that the court erred in granting a summary judgment in favor of the appellees. The appeal is based on two grounds—first, that there was a "genuine issue as to a material fact" (*Code Ann.* § 110-1203; Ga. L. 1959, p. 234) and hence a summary judgment should not have been granted, and second, the proposed changes in the nature of Georgia Military Academy would constitute a breach of the condition subsequent.

■ There was no genuine issue as to a material fact which should have been submitted to a jury. To the motion for summary judgment was attached an affidavit of the President of Georgia Military Academy setting out various facts entering into the decision by the governing board to dispense with military training and to admit girl students at Georgia Military Academy. Appellants filed no counter affidavit. The sole question for determination was whether, under the terms of the condition subsequent contained in the deed conveying the property to Georgia Military Academy, there would be a forfeiture of the property to the heirs of the grantor in case the proposals of the governing board were carried out. This was purely a question of law to be determined by the court. Thus, the court properly entered judgment on the motion for summary judgment without submitting the case to a jury.

■ (a) Certainly changing the name of the corporation from "Georgia Military Academy" to "Woodward Academy, Inc." would not breach the covenant, for the name is not the purpose or a purpose for which the corporation was created.

(b) On determining whether the admission of girls and/or dispensing with military training would work a forfeiture of the estate under terms of the condition subsequent, certain principles of law are applicable. First, courts look with favor on charitable and educational gifts and trusts." "Gifts or trusts for charitable purposes are favorites of the law and the courts . . . [they] will not be declared void if they can, by any possibility consistent with law, be upheld; courts of equity, it is

said, will go to the length of their judicial power to sustain such gifts." 15 Am. Jur. 2d 111, Charities, § 105. Conditions subsequent in deeds are not favored in this State. *Taylor v. Sutton*, 15 Ga. 103 (4). "No act will be construed to work the destruction of an estate, unless the language of the grant to that effect be clear." *Lawson v. Georgia So. &c. R. Co.*, 142 Ga. 14, 19 (82 SE 233). The general principle is well stated in 19 Am. Jur. 527, Estates, § 65: "It is a well-settled rule that conditions tending to destroy estates, such as conditions subsequent, are not favored in law. They are strictly construed. Accordingly, no provision will be interpreted to create such a condition if the language will bear any other reasonable interpretation, or unless the language, used unequivocally, indicates an intention upon the part of the grantor or devisor to that effect and plainly admits of such construction. . . Generally, all doubts are resolved against restrictions on the use of the property by the grantee." "The general abhorrence to the condition subsequent with its threat of forfeiture extends to forfeiture itself. Thus the courts are inclined not to construe a state of facts as constituting a breach of a condition subsequent unless such a situation clearly exists." Thompson on Real Property, Vol. 4, § 1886, p. 648. See also cases cited.

The breach must be clearly and unequivocally manifest to work a forfeiture of this property under the condition subsequent. We do not think such is true here. In the first place the condition subsequent provides that the property shall revert if it ceased to be used for the purposes set forth in the charter of the school, and that was "for the purpose of a charitable and educational institution."

It is significant in determining whether the condition subsequent would be breached by admitting girls or abolishing military training, that after stating in the petition for charter that the "purpose" is to conduct a charitable and educational institution as thereafter set out, the petition immediately follows with requests for certain "rights and powers." It did not set out requirements, but it stated that petitioners desire the right and power to conduct a preparatory school for the education of boys and young men, the right to prescribe courses of study

and to maintain and preserve order, to confer degrees, etc., to do all acts necessary to the operation of a military academy and preparatory school. Nowhere is it said that grantee must conduct a military academy or must not admit girls and young women. If it had, clearly there would be a forfeiture of the estate.

The charter conferred power upon the governing board to apply for and obtain charter amendments "either in form or substance." This language indicates that Colonel Woodward, after conveying his property for "a charitable and educational institution," conferred upon the governing board broad powers as to how that institution should be operated, permitting the board to change the charter "in form and substance," which permitted the board to adjust the school to changing conditions of the future. He clearly did not expect the school always to be operated just as it was then being operated, and foreseeing such, gave the governing board power to change the charter in substance, as it now wishes to do.

We construe the charter as requiring that the property be used for a "charitable and educational institution," and giving the board broad powers as to the manner and method of operation, and that the reverter clause in the deed would not become effective if the governing board should admit girls and young women or should not furnish military training to its students but only if the school should cease to function as a charitable and educational institution.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., Candler, P. J., and Grice, J., who dissent.*

DUCKWORTH, Chief Justice, dissenting. I am unalterably opposed to changing the expressed and unmistakable will of a dead man when his lips are sealed in death. No one can look at the life of this donor without seeing his interest in military training, and since this was at the time of the gift an expressed charter intention, and he provided for a reverter if the property was not used for this purpose, reason would dictate that it reverts if this use of it ceases. He is not here to defend his known will, but my judgment is on his side. Doubtless the property has since greatly increased in value, but the takers accepted this eventuality and were in honor bound to either comply with the condition

or gracefully accept the reversion of the property regardless of its increased value.

To say as the majority do that since the charter provided for its amendment he intended that his condition be subject to all possible amendments is in my judgment to hold that he was unconcerned with the condition and intended that it be obliterated by future charter amendment. Such position is contrary to all human reason and would say the donor was a reckless, indifferent and foolish man because it would put him in a position of stipulating a meaningless condition. It is not solemn judicial reasoning to engage in the game of speculating as to the content of future amendments of the charter, the content of which he could not possibly have known at the time of the conveyance and then conclude that the cautious man who wrote the reverter provision did at the same time and in the same act suddenly become a carefree, reckless gambler who intended that his property by future amendment of the charter be used for all manner of purposes which he might abhor, but a departure from such sinful and unknowable uses would work a reverter. Sound and solid reason will accept nothing else but his expressed condition that the property be used for the purposes then at that time provided in the only charter in existence. If courts are to defeat known wishes of donors, let them try it as to those then living who can defend, but for the sake of human justice make them keep faith with the dead who can not defend.

GRICE, Justice, dissenting. I respectfully dissent because I feel that the proposed changes sanctioned by the majority violate the basic purpose of this institution as provided by its charter.

Its provisions, insofar as material here and with my italics, follow.

1. "[Petitioners] desire . . . to be incorporated . . . under the name and style of GEORGIA MILITARY ACADEMY. . .

3. "The purpose of said corporation is . . . conducting a charitable and educational institution *as hereinafter set out.*

4. "Petitioners desire the right and power to conduct a preparatory school for the education of *boys and young men* and in

connection therewith . . . the right to do all acts necessary and proper to the operation of a *Military Academy* and preparatory school engaged in educating *boys* for entrance to colleges, universities, medical, engineering, scientific, and commercial institutions, the United States *Military Academy,* the United States *Naval Academy,* the *Army* and *Navy* of the United States, and for intelligent and loyal citizenship.

5. "Petitioners desire the right to . . . own, sell and deal in . . . property . . . for the purpose of using any profits derived . . . for the education of worthy, poor and indigent *youths* who might not otherwise receive an education. . .

6. "Petitioners desire the right to . . . have the powers generally enjoyed by commercial organizations . . . except that the profits derived . . . shall be used *as above provided, namely,* for the education of worthy, poor and indigent *boys* and *young men.*

7. "Petitioners desire the right and power to receive gifts, property . . . to hold, invest, and to use such funds . . . for the operation, maintenance and expansion of *said Academy* for the purpose of educating poor and worthy *boys and young men* who might not otherwise receive an education and *training for service to their country.*

8. "The corporation shall have no capital stock and all the property owned by [it] shall be held and used solely for *educational purposes, as above provided.*

9. "The management of said corporation shall be vested in a Governing Board. . .

10. "Petitioners further desire the right and power to amend its charter . . . either in form or substance. . .

11. "WHEREFORE, petitioners pray that they . . . be incorporated . . . under the name and style of GEORGIA MILITARY ACADEMY for all the purposes and objects and with all the rights, powers and privileges *hereinbefore set out.* . ."

The foregoing, to me, clearly and unequivocally shows that the basic purpose was the operation of Georgia Military Academy, a charitable and educational institution which enrolls boys and young men only and which provides military training to those students. This purpose is not the conduct of *any* type of

"charitable and educational institution," but such "as herein-after set out." (Par. 3.) This reference incorporates into the purpose the language in subsequent paragraphs, just quoted, which manifests the requirement for military training and the restriction to boys and young men, under the name "Georgia Military Academy."

A different result in construction is not warranted because, as the majority states, the charter recites that the petitioners "desire the right and power" to conduct the school instead of stating that the petitioners *must* conduct a military academy and *must not* admit girls and young women. This is not of significance because nowhere in the charter is there language which expressly requires that petitioners do *anything*. Each act sought to be authorized is phrased in the language "Petitioners desire the right and power to. . ."

Nor is it of decisive consequence that the charter authorizes amendment "either in form or substance." This language was routine to charter applications and did not militate against the basic purpose gathered from the charter as a whole.

I take no issue with the statement of principles relating to charitable gifts or trusts, conditions subsequent, and construc-tion against forfeiture of estates wherever possible. But none of those principles, as I view them in the light of the facts here, are applicable.

Colonel Woodward had the foresight to take deliberate action and to provide against just what is involved in the changes sought. He provided in the deed in question that "This convey-ance is made with the further condition subsequent that if ever the aforementioned properties herein conveyed cease to be used for the *purposes set forth in the Charter* of the Grantee corpora-tion herein named, then said properties shall revert to the Grantor, J. C. Woodward, his heirs, administrators, executors and assigns." (Emphasis mine.)

My view is that to sanction the changes here is to thwart the beneficent purpose of Colonel Woodward to continue the "Geor-gia Military Academy" in the manner that its charter provided. If, as the plaintiffs desire, these changes are effectuated, then and in that event, there is a clear and unequivocal violation of the

condition in his deed, and the property should revert to his family.

I would reverse the judgment. I am authorized to state that Chief Justice Duckworth concurs in this dissent.