A09A2141. CRYSTAL FARMS, INC. v. ROAD ATLANTA, LLC.
(690 SE2d 666)

MILLER, Chief Judge.

In 2006, Crystal Farms, Inc. sued Road Atlanta, LLC for trespass, conversion of trees, and diminution in value of its property. Underlying the complaint was Crystal Farms's contention that Road Atlanta had abandoned two right-of-way easements over Crystal Farms's property. Road Atlanta answered and asserted a counterclaim seeking a declaration that it had not abandoned the easements. Following a bench trial, the trial court ruled that the easements had not been extinguished and entered judgment in favor of Road Atlanta on Crystal Farms's claims and on Road Atlanta's counterclaim. Crystal Farms appeals, arguing that the trial court applied the wrong legal standard in evaluating whether the easements had reverted to Crystal Farms. We agree and remand the case for application of the correct legal standard.

> In reviewing a judgment entered in a bench trial, we construe the evidence in favor of the judgment and the court's factual findings will not be disturbed when supported by any evidence. We owe no deference, however, to the court's legal analysis which is subject to de novo review.

(Citation omitted.) *Wright v. Piedmont Property Owners Assn.*, 288 Ga. App. 261, 262 (653 SE2d 846) (2007).

So viewed, the evidence shows that Crystal Farms owns real

property in Hall County that abuts real property owned by Road Atlanta. On or about April 1, 1978, Crystal Farms's predecessor in title, Lenox Thompson Thornton, granted a right-of-way easement (the "Thornton Easement") to Road Atlanta's predecessor in title.[1] The Thornton Easement connected Road Atlanta's property to Howington Road, which in turn connected to Highways 53 and 211.

When Crystal Farms bought its property from Thornton in 1984, it sought to have Howington Road closed and abandoned because the road ran through an area where Crystal Farms planned to place its chicken houses. In order to obtain Road Atlanta's consent to the closure, Crystal Farms granted Road Atlanta a right-of-way easement (the "Crystal Easement") running from the termination point of the Thornton Easement and across Crystal Farms's property to Highway 211.

The Thornton Easement provides that the grant is "[t]o have and to hold the said easement and right of way for the purpose of constructing, maintaining and using on said described property a road or vehicular driveway to afford ingress and egress to and from Grantee's land and said rural road." The Crystal Easement includes a substantially identical provision for ingress and egress to and from the grantee's land, except that access is with respect to Highway 211. Each easement provides that it is a "perpetual, non-exclusive easement," but also contemplates that "in case said easement and right-of-way should be abandoned and is no longer used for road purposes in accordance herewith" then "the grant made by this instrument shall be thereafter null and void" and unrestricted title reverts to the grantor and its successors in title.

The trial court found "evidence of nonuse of both easements for at least twenty years." The evidence shows that Road Atlanta has not used the Thornton Easement since 1984, and that Road Atlanta has never used the Crystal Easement or constructed or maintained a road thereon.

1. Crystal Farms contends that the trial court erred by applying the wrong legal standard in evaluating whether the easements at issue had reverted to Crystal Farms. We agree.

In its order and judgment the trial court first determined that Georgia law contemplates "that an intent to abandon be made manifest by an affirmative act of the easement-holder," and that "[i]n the instan[t] case, there is no evidence of any such act manifesting a clear intent to abandon." The trial court then turned

---

[1] Unless otherwise noted, subsequent references to "Road Atlanta" and "Crystal Farms" include, as applicable, the predecessors in title to Road Atlanta, LLC and Crystal Farms, Inc., respectively.

to the reversionary language in the Thornton Easement and the Crystal Easement, noting that it "could find no guidance from current case law on how to interpret such provisions with regard to express easements." Accordingly, the trial court concluded that it was "left with interpreting said provisions as requiring an affirmative showing of abandonment," and that, no such showing having been made, neither the Thornton Easement nor the Crystal Easement had been extinguished.

Notwithstanding the trial court's findings, applicable authority does provide guidance in interpreting the easements. "In interpreting an express easement, the rules of contract construction apply. The construction of a contract is a question of law for the court. The cardinal rule of construction is to ascertain the parties' intent." *Irvin v. Laxmi, Inc.*, 266 Ga. 204, 205 (1) (467 SE2d 510) (1996).

> Arriving at this intention requires consideration of the whole instrument, the contract, the subject matter, the object, the purpose, the nature of restrictions or limitations, the attendant facts and circumstances at the time of making the instrument, and the consideration involved.

(Citation omitted.) *Eagle Glen Unit Owners Assn. v. Lee*, 237 Ga. App. 240, 242 (1) (b) (514 SE2d 40) (1999). A limitation on the duration of an easement is also interpreted in light of the parties' intent. See *Atlantic Coast Line R. Co. v. Sweat*, 177 Ga. 698, 710 (171 SE 123) (1933). Notwithstanding the foregoing, "[a]lthough the cardinal rule of construction is to ascertain the parties' intent, the law in Georgia does not favor the termination of easements," and so the easements' provisions providing for their termination and reversion to the grantor must be strictly construed. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745, 747 (548 SE2d 646) (2001). In light of these standards, it is apparent from the trial court's order that it did not apply the applicable rules of construction in interpreting the easements.

Road Atlanta does not dispute that the trial court was bound to give effect to the intent of the parties, but contends that the trial court correctly interpreted the plain meaning of the easements. Road Atlanta argues that the easements cannot revert to Crystal Farms unless the easements are "abandoned," a term undefined by the instruments and therefore, it contends, properly viewed by the trial court in the context of the stringent requirements for demonstrating the abandonment of an express easement at common law. See, e.g., *Magnetic Resonance Plus v. Imaging Systems Intl.*, 273 Ga. 525, 527 (2) (543 SE2d 32) (2001) ("[t]he laws which exist at the time and place of the making of a contract[ ] enter into and form a part of it")

(citation and punctuation omitted). In addition, Road Atlanta notes, the instruments require the easements be abandoned "and" the easements must be "no longer used for road purposes." Thus, Road Atlanta contends, if the parties had intended to define "abandoned" as "no longer used for road purposes," they were free to do so, but did not. Road Atlanta further argues that, having never built a road over the easements to access Highway 211, Crystal Farms could not and did not demonstrate that the easements were "no longer" used for road purposes. Finally, Road Atlanta argues that the trial court's interpretation preserves the benefit of its bargain for perpetual easements.

At common law an express easement may be abandoned when nonuse "is accompanied by acts manifesting a clear intent to abandon, and which destroy the object for which the easements were created or the means of their enjoyment." (Citation omitted.) *Tietjen v. Meldrim*, 169 Ga. 678, 699 (151 SE 349) (1930). Although mere nonuse of an express easement will not generally result in its extinguishment, the parties may agree that an easement will terminate and revert to the grantor upon nonuse. See *Atlantic*, supra, 177 Ga. at 710. Thus, a grant of a right of way "so long as [the grantee], their successors and assigns, shall maintain and use said road; but to revert to the [grantor] whenever said road shall be abandoned" was interpreted by our Supreme Court to reflect the parties' intent that "a failure to 'maintain and use said road' . . . would constitute an abandonment within the purview and meaning of the particular agreement." Id. The Court noted that in viewing the instruments, "the word 'abandoned' should be interpreted in the light of the other language used, and not in a technical sense." Id.

Here, the parties' express intent was to create easements "for the purpose of constructing, maintaining and using on said described property a road" to allow for ingress and egress from Road Atlanta's property. In turn, the respective easements revert to Crystal Farms "in case said easement and right-of-way should be abandoned and is no longer used for road purposes in accordance herewith." The easements also provide that the grantor reserves the right to joint use of "said road or driveway" which shows, in addition to the other language within the instruments, that the parties contemplated that Road Atlanta would construct and maintain a road on the easements. Viewing the instruments as a whole, and mindful that the reversionary language at issue must be strictly construed, we find that the parties intended that the respective easements would be considered to be abandoned by Road Atlanta when they were no longer used for road purposes. Although, as Road Atlanta points out, the parties were free to separately define "abandoned," it does not follow that their failure to do so removes the term from the context in which it

is used. See *Atlantic*, supra, 177 Ga. at 710.

Nor does Road Atlanta's failure to build a road over the easements to access Highway 211 show that the trial court necessarily reached the correct result in finding that the easements had not been extinguished. As Road Atlanta points out, the easements do not obligate it to do anything within a prescribed time period. Although there was no time requirement for Road Atlanta to commence using the easements "for the purpose of constructing, maintaining and using on said described property a road," the law presumes that the parties intended that the use would begin within a reasonable time. See *Cassville-White Associates v. Bartow Associates*, 150 Ga. App. 561, 565 (4) (258 SE2d 175) (1979); *Lawson v. Ga. Southern &c. R. Co.*, 142 Ga. 14, 16-18 (82 SE 233) (1914) (grant "for railroad purposes only, and for the time that they shall so use it," to include "the limitation that the estate conveyed should cease and determine should the railroad company fail to use them for railroad purposes within a reasonable time"). Given that the easements contemplated a grant for road purposes, such usage to commence within a reasonable time, and an expressly stated reversion to the grantor if no longer used for road purposes, the parties intended that Road Atlanta's failure to use the easements for the purposes for which they were granted within a reasonable time would result in their reversion to Crystal Farms. See, e.g., id.; *City of Atlanta v. Jones*, 135 Ga. 376, 379 (69 SE 571) (1910) ("[i]f parties desire that a forfeiture shall result, or that an estate shall terminate because of the breach of a covenant or failure to use the property for the purpose mentioned in the deed, they should so state").

Lastly, Road Atlanta argues that it bargained for perpetual easements and the trial court correctly concluded that mere nonuse would not terminate that interest. The instruments provide, however, that they were *"for road purposes as hereinafter set out*, a perpetual"[2] easement, and the respective grants later provide for a reversion to the grantor, showing that the express intent of the parties was for the easements to last indefinitely, so long as they were used for road purposes.

In view of the foregoing, we find that the trial court failed to employ the correct standard in interpreting the easements and that it did not correctly interpret the easements' reversionary clauses notwithstanding its failure to consider the intent of the parties.

2. Crystal Farms further contends that the trial court erred by applying the wrong legal standard regarding evidence of "intent to abandon" under Georgia law without regard to the express contrac-

---

[2] (Emphasis supplied.)

tual reversionary language. In light of our analysis in Division 1, supra, we agree with Crystal Farms that Road Atlanta's intent to abandon the easements was not required to be evidenced by an "affirmative act," as found by the trial court. Compare *Atlantic*, 177 Ga. at 713 (jury authorized to find "definite and intentional" nonuse constituting abandonment within the meaning of the instrument). As to the standard for considering whether the easements reverted to Crystal Farms, provisions containing conditions tending to destroy estates are not favored (see *Preferred Real Estate Equities*, supra, 248 Ga. App. at 747), and this extends to the forfeiture itself, which must be "clearly and unequivocally manifest." *Harris v. Ga. Military Academy*, 221 Ga. 721, 723 (2) (b) (146 SE2d 913) (1966).

3. Crystal Farms further argues that if the trial court applied the correct legal standard of review, its holding that Road Atlanta had rebutted the presumption of extinguishment arising from 20 years of nonuse was clearly erroneous. Since we conclude that the trial court did not apply the correct standard of review, this claim of error is moot.

"The court's judgment in a non-jury trial will be reversed where it is apparent that it rests on erroneous reasoning or on an erroneous legal theory." (Punctuation and footnote omitted.) *McCollum v. O'Dell*, 241 Ga. App. 6, 10 (2) (525 SE2d 721) (1999). Accordingly, the trial court's judgment is reversed and the case is remanded for issuance of a new order applying the correct standard of construction and for further proceedings not inconsistent herewith.

*Judgment reversed and case remanded. Andrews, P. J., and Barnes, J., concur.*

DECIDED FEBRUARY 3, 2010 —
RECONSIDERATION DENIED FEBRUARY 25, 2010 —

*Parker, Hudson, Rainer & Dobbs, Ronald T. Coleman, Jr.*, for appellant.

*Smith, Gilliam, Williams & Miles, Matthew T. Smith, Roger B. Hatcher, Jr.*, for appellee.